**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GENZYME CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>THOMAS DOTTER and NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>　　　　　　　Defendants. | CIVIL ACTION No. 18-cv-11940-RGS |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S MOTION FOR PROTECTIVE ORDER**

Since filing its complaint in September 2018, Plaintiff Genzyme Corporation ("Genzyme") has noticed the deposition of Defendant Thomas Dotter ("Dotter") on six different occasions (twice during expedited discovery and four times since). Each time, either Dotter or Defendant Novartis Pharmaceuticals Corporation ("Novartis") refused to agree to Genzyme's proposed dates and each time Genzyme has acted in good faith and attempted to accommodate the parties and their counsel. Finally, on March 3, 2019, all parties agreed that Dotter's deposition would be on April 8 in Boston, ending months of delays. Then, on March 28, just 10 days before the deposition, Novartis asserted that the Genzyme's deposition of Dotter could not go forward because Genzyme has not completed its documents production to Novartis.

The Court should reject this belated attempt by Novartis to once again prevent Dotter's deposition from proceeding. First, this is Genzyme's deposition of Dotter and whether or not Genzyme has completed its document production to Novartis is irrelevant. Dotter is Novartis' former employee and co-defendant who is aligned with Novartis in this proceeding. Novartis

could easily get the information it contends it needs from Dotter outside of a deposition. Second, Novartis agreed to the date after Genzyme served its objections and responses to Novartis' document requests in which Genzyme made clear that it would not produce documents until after Novartis agreed to an amended protective order to protect Genzyme's trade secrets and asserted several other objections to Novartis' requests. Novartis nonetheless sat on its hands and did not attempt to resolve Genzyme's objections until weeks later when Genzyme requested a meet and confer regarding Novartis' objections to Genzyme's document requests. Finally, Genzyme has been trying to depose Dotter since mid-January. After months of discussion and delay, he has finally agreed to a date and is voluntarily coming to Boston. Moving the deposition now will only cause further unnecessary delay. Dotter and Novartis have collectively stonewalled Genzyme's attempts to take Dotter's deposition for more than three months, and this behavior should not be permitted to continue.

## BACKGROUND

A. <u>Genzyme Repeatedly Accommodates Dotter's and Novartis' Scheduling Requests</u>

Novartis' motion notably omits much of the procedural history, including Genzyme's repeated attempts to accommodate both parties in scheduling Dotter's deposition and Novartis' delays in addressing Genzyme's objections to its document requests. By way of summary, Dotter, who lives in Texas, agreed to travel to Boston for a deposition on Monday, October 15, 2018. On Friday, October 12, at approximately 6:30 p.m., Dotter's counsel informed Genzyme that Dotter had terminated him and would not be appearing for his deposition. *See* ECF No. 32-1. After Dotter's new counsel moved to stay discovery, the Court ordered that Dotter appear for a deposition by October 22. ECF No. 33. In accordance with the Court's order, Genzyme requested that Dotter be deposed on either October 19 or 22. On October 19, Dotter represented

that he would assent to a preliminary injunction, which led to Genzyme agreeing to terminate further expedited discovery without a deposition. ECF No. 37.

On January 11, 2019, Genzyme served its initial disclosures together with a notice of deposition for Dotter for February 12, 2019 in San Antonio. *See* Affidavit of Michael J. Licker ("Licker Aff.") at Ex. A. On January 31, 2019, having not heard anything from Dotter about the deposition date, Genzyme emailed Dotter's counsel to confirm the date worked. *Id*. at Ex. B. Dotter's counsel stated that the date did not work for him and expressed general resistance to holding the deposition until the completion of written discovery. *Id*. Counsel for Genzyme requested that Dotter provide dates in February on which he would be available. *Id*.

On February 6, counsel for Dotter emailed counsel for Genzyme to meet and confer regarding a motion for reconsideration of the Court's order granting Genzyme's motion to dismiss Dotter's counterclaim. *Id*. at Ex. C. In response, still not having received any deposition dates from Dotter, Genzyme again requested available dates in late February or early March. Dotter's counsel refused to provide any dates, this time citing Dotter's motion for reconsideration. *Id*. On February 7, Genzyme made another request for available dates. *Id*. On February 14, still not having received a response, and having asked four different times for dates, Genzyme noticed the deposition for March 8 (this time in Boston because Dotter had again expressed a willingness to travel here). *Id*. at Ex. D. Dotter refused to appear on March 8 (in Boston or elsewhere), and offered April 8 or 15 as available dates in Boston. *Id*. at Ex. C. On February 20, Genzyme again requested that Dotter provide available dates in February or March and suggested March 8, 12, 13 or 14 in either Boston or Texas. *Id*. Counsel for Novartis indicated that he was not available on March 8 or 13, but counsel for Dotter refused to provide any availability, again citing the motion for reconsideration. *Id.* On February 22, having

requested availability from Dotter several times, Genzyme noticed the deposition for March 14 in Texas (because Dotter refused to appear in Boston any time other than April 8 or 15). *Id.* at Ex. E.

On February 28, Dotter's counsel disclosed for the first time that he was unavailable on March 14. *Id*. at Ex. F. He told Genzyme that he had jury duty and that Dotter had been diagnosed with a medical condition that required a treatment that day. *Id*. Counsel for Novartis was directly involved in these communications and repeatedly suggested that Genzyme agree to defer the deposition until April 8, and threatened to move for a protective order if Genzyme pressed ahead with holding the deposition earlier in Texas. *Id*. at Exs. C and F. In light of the representations of Dotter's counsel, on March 3, 2019, Genzyme again withdrew its deposition notice and agreed to April 8. *Id*. at Ex. F. On March 6, Genzyme served the deposition notice. *Id*. at Ex. G.

B. <u>Genzyme Serves Objections to Novartis' Document Requests Prior to Novartis Agreeing to April 8</u>.

On January 23, 2019, Novartis served its First Set of Requests for Production of Documents on Genzyme, and on January 31, 2019, Genzyme served its First Set of Requests for Production of Documents on Novartis. *Id*. at ¶ 9. On February 22, 2019, Genzyme served its responses and objections to Novartis' 57 document requests. *Id*. at ¶ 10. The objections included that Genzyme would not produce confidential information, particularly concerning its trade secrets, to Novartis until Novartis agreed to an amended protective order, and several objections to specific requests.[1] *Id*. at Ex. H. On March 4, 2019, Novartis served its responses and objections to Genzyme's requests. *Id*. at ¶ 10.

---

[1] The current protective order in the case was entered before Novartis was a party. Moreover, it does not contain an outside attorneys' eyes only category because the only defendant was an individual. Given that this matter directly

On March 12, 2019, counsel for Genzyme requested a meet and confer regarding Novartis' document responses and objections during that week. *Id.* at Ex. I. On March 14, counsel for Genzyme sent a follow-up email after Novartis did not respond. *Id.* Counsel for Novartis responded that day and indicated that it would also like to meet and confer regarding Genzyme's responses and objections, but that none of Novartis' lawyers were available until March 27, 28 or 29. *Id.* This was the first time that Novartis expressed concern about any of Genzyme's objections to its document requests or followed-up about the requests at all. Counsel for Genzyme responded with a preference to speak sooner, but agreed to speak on any of the days proposed by Novartis. *Id.* Counsel for Novartis never raised an issue with Dotter's deposition during these email exchanges. On March 26, 2019, Novartis sent a deficiency letter regarding Genzyme's objections and responses to Novartis' document requests. *Id.* at Ex. J. It did not mention that Novartis was concerned about the timing of Dotter's deposition.

Counsel for all of the parties spoke by phone on March 28. *Id.* at ¶ 13. After spending more than an hour resolving almost all of the parties' disputes regarding document discovery, counsel for Novartis raised for the first time that Dotter's deposition should not go forward because Genzyme had not completed its document production. *Id.* Genzyme's counsel pointed out that the parties had agreed on the April 8 date on March 3, but Novartis waited weeks to raise this issue, that Novartis did not need Genzyme's documents for Genzyme's deposition of Dotter to proceed, and that, in any event, Genzyme had produced a substantial volume of documents to Novartis arising out of expedited discovery. *Id.* Genzyme also offered that Novartis could identify particular categories of documents that it believed to be relevant to Dotter's deposition

---

concerns Genzyme's trade secrets, it has significant concerns about producing documents that can be viewed by any employee of a direct competitor, including in-house counsel.

and that Genzyme would attempt to produce them prior to the deposition. *Id*. Novartis refused to consider this offer and filed the instant motion. *Id*.

## ARGUMENT

This motion is nothing but obfuscation of the real issue: Dotter's and Novartis' continued attempt to avoid and delay Dotter's deposition. Federal Rule of Civil Procedure 30 provides a party with the right to take a deposition at any time after the start of discovery. Genzyme has now noticed Dotter's deposition on four different dates in two different states over the course of three months. It has done so in an effort to obtain routine discovery without involving the Court. Each time, either Dotter, Novartis or both has objected. Each time, Genzyme has agreed to move the date in an effort to accommodate the parties and their counsel. After months of back-and-forth, all of the parties agreed that Dotter's deposition would proceed on April 8 (Novartis' counsel even agreed to host the deposition at its office at Dotter's insistence). The repeated attempts by both defendants at delay continue to raise questions about why there is such resistance to a seemingly routine deposition. The only reason that Novartis has belatedly provided for again postponing the deposition is that Genzyme has not completed its document production and holding the deposition now would risk Dotter being deposed twice (once by Genzyme and once by Novartis). This argument has no merit.

First, nearly all of Genzyme's claims against Novartis relate to Novartis' misappropriation of Genzyme's trade secrets. As such, nearly all of the evidence Novartis would need to defend against these claims – i.e., whether they are actually trade secrets, whether Genzyme has disclosed them, and whether Genzyme has suffered damages – would come from Genzyme, not Dotter. Other than generalized concerns of prejudice, Novartis has not identified a single category of requested documents that it needs for the deposition. During the meet and

confer, Novartis articulated just one such type: documents concerning Genzyme permitting Dotter or other employees to use work product for educational purposes or for interviewing. Novartis will have every opportunity to ask questions about <u>Genzyme's</u> policies during depositions of <u>Genzyme</u> employees. This is in no way a bar to Genzyme deposing Dotter, nor is there any real threat that Novartis will need to depose him a second time.

Genzyme's production of documents to Novartis therefore has no bearing on Genzyme's deposition of Dotter. It is Genzyme's deposition and Genzyme believes it has the documents it needs to proceed. Genzyme also produced more than 1,000 pages of documents in expedited discovery and provided all of those documents to Novartis months ago when it was added as a defendant. To the extent Novartis believes it needs to ask Dotter questions at the deposition, it has hundreds of documents concerning Dotter's roles and responsibilities at Genzyme, his departure from Genzyme and the confidential information that Dotter took with him from Genzyme, including documents that it produced. Novartis also rejected an offer by Genzyme to search for and immediately produce certain categories of documents that Novartis believes may be relevant to Genzyme's deposition, further demonstrating that this is yet another delay tactic. The reality, however, is that Dotter is a co-defendant aligned with Novartis and it can get any information it claims it needs outside of the deposition.

Second, Novartis now seeks to pin its own failure to address Genzyme's valid objections on Genzyme. Novartis has known since February 22 when Genzyme served its responses and objections to Novartis' 57 document requests that Genzyme had significant concerns about Novartis' requests, including that Novartis had not agreed to <u>any</u> protective order. Licker Aff. Ex. H. It never once prior to sending a March 26 letter raised the issue of Genzyme's objections, never questioned Genzyme about the need for an amended protective order, or asked Genzyme

for a proposed amendment. *Id.* at ¶ 11. Nonetheless, on March 3, having already seen Genzyme's objections, Novartis agreed to an April 8 deposition for Dotter. *Id.* at Ex. F. Novartis did not even seek to meet and confer about Genzyme's objections until Genzyme requested a meet and confer call on March 12. *Id.* at ¶ 11. Counsel for Novartis then did not make themselves available for the meet and confer until March 28, and never raised the issue of Dotter's deposition or expressed concern about it going forward in the interim. *Id.* If Novartis had a real concern about the deposition, it would have raised it weeks ago.

Finally, Genzyme runs the real risk of prejudice if the deposition is once again postponed. Dotter and Genzyme have collectively postponed Dotter's deposition for months. Genzyme has significant concerns, based on the number of times the deposition has been postponed and Dotter's medical condition, that if the deposition is not held on April 8, Dotter and Novartis will just continue to delay it. As the record demonstrates, Genzyme has been more than patient and accommodating. Further delay would be highly prejudicial as discovery is now reaching an end. This is Genzyme's deposition of Dotter and both parties are prepared to proceed. The Court should reject Novartis' last-ditch effort to prevent that from happening.

## CONCLUSION

For the reasons set forth above, this Court should deny Novartis' motion for a protective order and order that Dotter's deposition proceed as scheduled on April 8.

Respectfully Submitted,

GENZYME CORPORATION,

By its attorneys,

*/s/ Michael J. Licker*
James W. Bucking, BBO #558800
Michael J. Licker, BBO #678746
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
Tel: 617-832-1000
Fax: 617-832-7000
jwb@foleyhoag.com
mlicker@foleyhoag.com

Dated:  April 2, 2019

**CERTIFICATE OF SERVICE**

I, Michael J. Licker, counsel for the Plaintiff, do hereby certify that a true and accurate copy of the foregoing document, which was filed via the Court's ECF system on April 2, 2019, will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants.

*/s/ Michael J. Licker*
Michael J. Licker