UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENZYME CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS DOTTER and NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>Defendants. | CIVIL ACTION No. 18-cv-11940-RGS |

## ~~PROPOSED~~ PERMANENT INJUNCTION

1. Defendant Thomas Dotter ("Dotter") shall comply with the post-employment restrictive covenants set forth in his Agreement dated May 8, 2012. A copy of the Agreement is attached to this Order as Exhibit A.

2. To wit, beginning on October 16, 2018 and for one (1) year thereafter:

   a. Dotter shall comply with the non-competition and non-solicitation covenants set forth in Section 7(a)(i) - (iii) of the Agreement; and

   b. Dotter shall comply with the confirmation of subsequent employment status requirement set forth in Section 7(b).

3. Dotter shall be prohibited from using or disclosing Genzyme Confidential Information (as defined in Section 9(c) of the Agreement), in any form, in accordance with Section 1(a) of the Agreement.

4. Dotter shall, within five (5) business days of this Order, return to Genzyme or ensure the destruction of all remaining Genzyme property (including Confidential Information) within his possession, custody or control, including without limitation all Genzyme property in the

possession of vendors employed by Dotter for purposes of this litigation.

Dated: August 13 2019

_____
Hon. Richard G. Stearns
United States District Court Judge

# EXHIBIT A

# GENZYME CORPORATION

## AGREEMENT

In consideration of my employment by Genzyme (defined in Section 9 below), a Massachusetts corporation with its principal place of business in Massachusetts, and in recognition that (i) as an employee of Genzyme I will have access to Confidential Information (defined in Section 9 below), customers and corporate opportunities of Genzyme, and (ii) if I become employed or affiliated with a Competing Organization (defined in Section 9 below), Genzyme will be at risk, I agree with Genzyme as follows:

1.  Confidential Information.

    a.  No Unauthorized Disclosure or Use. While employed by Genzyme and thereafter, I shall not, directly or indirectly, use or disclose to anyone outside of Genzyme any Confidential Information other than pursuant to my employment by and for the benefit of Genzyme.

    b.  Ownership of Confidential Information. I agree that all originals and all copies of manuscripts, letters, notes, notebooks, reports, models, computer files and other materials containing, representing, evidencing, recording, or constituting any Confidential Information (created by myself or others) shall be the sole property of Genzyme or the property of third parties who lawfully disclosed the Confidential Information under obligations of confidentiality.

    c.  Third Party Confidential Information. I understand that Genzyme from time to time has in its possession information which is claimed by others to be proprietary or confidential and which Genzyme has agreed or is under an obligation to keep confidential. I agree that all such information shall be Confidential Information for purposes of this Agreement.

2.  Developments.

    a.  Ownership. I agree that all Developments (defined in Section 9 below) created during the period of my employment with Genzyme or during the six month period following termination of my employment with Genzyme (whether or not made on Genzyme's premises, during work hours or disclosed by me to Genzyme), together with all products or services which embody such Developments, shall be the sole property of Genzyme.

    b.  Assignment and Cooperation. I agree (i) to make and maintain adequate and current written records of all Developments, and to disclose all Developments promptly, fully and in writing to Genzyme immediately upon development of the same and at any time upon request, (ii) to assign to Genzyme all my right, title and interest in and to all Developments and to anything tangible which evidences, incorporates, constitutes, represents or records any such Developments, (iii) to cooperate and assist Genzyme in obtaining and maintaining any governmental protection it may seek for such Developments, and to execute all documents that may be required therefor, and (iv) if such Developments constitute works made for hire under the laws of the United States, to assign to Genzyme all copyrights, patents and other proprietary rights I may have in any such Developments, together with rights to file for and/or own wholly without restriction United States and foreign copyrights, patents, and trademarks with respect thereto.

    c.  Prior Developments. I agree that the foregoing assignment covers all results, outputs and products of my work for Genzyme prior to the date hereof (whether as an employee or as a consultant), and that all related copyrights, patents and other intellectual property rights, and that all such results, output and products are Developments and the sole property of Genzyme.

3. **Exceptions to this Agreement.** I understand that Genzyme does not desire to acquire from me any trade secrets or confidential business information that I may have acquired from others. I have informed Genzyme, in the space below, of any (i) continuing obligations that I may have to any previous employers which require me not to disclose information to Genzyme or compete with any such previous employers; and (ii) confidential information or developments which I claim as my own or otherwise intend to exclude from this Agreement because it was developed by me prior to the date of this Agreement. I understand that after execution of this Agreement I shall have no right to exclude confidential information or developments from this Agreement.

(If there are none, please enter the word "None"; attach additional pages as necessary)

Note: For obligations not to disclose information to Genzyme or compete with any such previous employers, give the date of such obligations, identify the parties owed such obligations and the nature of the restriction. Please attach any such agreement(s) to this Agreement.

NONE

4. **Employee's Obligation to Cooperate.** At any time upon the request of Genzyme, I shall execute all documents and perform all acts which Genzyme considers necessary or advisable to secure its rights hereunder and to carry out the intent of this Agreement.

5. **Return of Property.** At any time upon the request of Genzyme, and in any event upon cessation of employment, I shall return promptly to Genzyme all Genzyme property, including all Confidential Information and Developments and any copies thereof.

6. **Employment At-Will.** Nothing in this Agreement shall require that Genzyme employ me for any period of time. I understand that I am an employee-at-will and that my employment relationship with Genzyme may be terminated by Genzyme or me at any time for any reason, with or without prior notice. I further understand that the employment-at-will relationship between me and Genzyme cannot be modified by oral or written statements from supervisors, managers or others at Genzyme; the at-will nature of my employment with Genzyme can only be modified by a written agreement signed by an Executive Vice President or the CEO of Genzyme.

7. **Restrictive Covenants.**

a. I acknowledge and agree that Genzyme has invested substantial time, money and resources in the development of its Confidential Information and the development and retention of its customers, clients, collaborators, and employees. I further acknowledge that during the course of my employment, I may be introduced to customers, clients, and collaborators of Genzyme, and agree that any "goodwill" associated with any customer, client, or collaborator belongs exclusively to Genzyme. In recognition of the foregoing, I specifically acknowledge and agree that while I am employed by Genzyme and for a period of one (1) year after termination of such employment (for any reason, whether voluntary or involuntary) I will not directly or indirectly in any position or capacity engage in the following activities for myself or for any other person, business, corporation, partnership or other entity:

(i) call upon, solicit, divert, or accept, or attempt to solicit or divert any of Genzyme's business or prospective business from any of Genzyme's customers, clients, or collaborators, or prospective customers, clients, or collaborators with whom I had contact or whose dealings with Genzyme I coordinated or supervised or about whom I obtained Confidential Information, at any time during the two (2) year period prior to the termination of my employment, unless I obtain prior written consent of Genzyme;

(ii) request, solicit, induce, hire (or attempt or assist in doing any of these actions) any employee or other persons (including consultants) who may have performed work or services for Genzyme within one (1) year prior to the termination of my employment with Genzyme to perform work or services for any person or entity other than Genzyme; or

(iii) become employed by, associated with or render services to any Competing Organization in connection with any Competing Product, in the United States or in any other country where Genzyme does business or is planning to do business. I understand and agree that this covenant not to compete is reasonable in that I can continue my chosen profession when I leave the employment of Genzyme so long as I do not work for companies that are Competing Organizations in connection with Competing Products and so long as I do not disclose confidential, proprietary and trade secret information of Genzyme. I understand and agree that it does not impose an unnecessary restraint because of the nature of the confidential, proprietary and trade secret information of Genzyme related to the Competing Products which mandates protection in the geographical areas described above. I also understand and agree that the covenant is necessary to protect the goodwill and confidential, proprietary and trade secret information of Genzyme.

I ACKNOWLEDGE THAT THESE RESTRICTIONS SHALL APPLY AND BE BINDING REGARDLESS OF CHANGES IN MY POSITION, DUTIES, GEOGRAPHIC LOCATION, RESPONSIBILITIES OR COMPENSATION DURING MY EMPLOYMENT.

b. *Confirmation of Post-Employment Status*. I agree to inform Genzyme, for a period of one year following the termination of my employment, of every place of employment and every affiliation I have in a company or business enterprise, directly or indirectly, as an employee, owner, manager, stockholder, consultant, director, officer, or partner. If I fail to so inform Genzyme, and I have violated the obligations set forth in this Section 7, the one-year period shall run from the date that Genzyme first learned of my activity.

c. *Small Ownership Exemption*. The provisions of this Section 7 shall not apply to ownership of less than one percent (1%) of the stock of any publicly traded corporation.

8. *Corporate Compliance*. I agree that I will abide by all policies and procedures that Genzyme may have in effect from time to time, including without limitation, Genzyme's Code of Conduct and corporate compliance program. I further acknowledge that failure to abide by policies and procedures may result in discipline, including immediate termination of my employment. Nothing herein limits my at-will employment with Genzyme, pursuant to paragraph six (6) above.

9. *Definitions*. The following terms, as used in this Agreement, shall have the meanings set forth below:

a. "Competing Organization" shall mean persons, organizations, or any other entity, including myself, engaged in, or about to become engaged in, research or development, production, distribution, marketing, providing or selling of a Competing Product.

b. "Competing Product" shall mean products, processes, or services of any person, organization, or entity other than Genzyme, in existence or under development, which are substantially similar, may be substituted for, or applied to substantially similar end use of the products, processes or services with which I worked on in any capacity, including a sales or marketing capacity, at any time during my employment with Genzyme or about which I acquired Confidential Information through my work with Genzyme.

c. "Confidential Information" shall mean all trade secrets, proprietary information, and

FINAL APRIL 2007 - 3 -

other data or information (and any tangible evidence, record or representation thereof), whether prepared, conceived or developed by an employee of Genzyme (including myself) or received by Genzyme from an outside source, which is in the possession of Genzyme (whether or not the property of Genzyme) and which is maintained in confidence by Genzyme, including, but not limited to: (i) significant technical and business information; (ii) all information relating to the design, manufacture, application, know-how, research and development of Genzyme's products and services; (iii) sources of supply and material; (iv) operating and other cost data; (v) information relating to present, past or prospective customers, customer relationships, customer proposals, price lists and data relating to pricing of products or services; (vi) patient medical records and all other information relating to patients; and (vii) any other information not generally known in the industry, including specifically, all information contained in manuals, memoranda, formulae, plans, drawings and designs, specifications, supply sources, and records of Genzyme including without limitation that which is legended or otherwise identified by Genzyme as "Confidential Information." Notwithstanding the foregoing, the term Confidential Information shall not apply to information which Genzyme has voluntarily disclosed to the public without restriction or which has otherwise lawfully entered the public domain.

      d.    "Developments" shall mean all Confidential Information and all other discoveries, inventions, ideas, concepts, research and other information, processes, products, methods and improvements, or parts thereof (including, without limitation, all computer programs, algorithms, subroutines, source codes, object codes, designs, and improvements), conceived, developed, or otherwise made by me, alone or jointly with others and in any way relating to the Corporation's present or proposed services, programs or products or to tasks assigned to me during the course of my employment, whether or not patentable or subject to copyright protection and whether or not reduced to tangible form or reduced to practice.

      e.    "Genzyme" shall mean Genzyme Corporation, and all other companies or entities currently or which in the future Genzyme Corporation owns or controls, directly or indirectly, capital stock or other equity interests representing at least 40% of the outstanding voting stock or other equity interests.

    10.    <u>Miscellaneous Provisions</u>.

      a.    <u>Entire Agreement and Amendment</u>. This Agreement contains the entire and only agreement between Genzyme and me respecting the subject matter hereof, and it supersedes all prior agreements and representations with regard to the subject matter hereof; provided however, to the extent I have a prior written agreement with Genzyme regarding confidentiality, noncompetition, nonsolicitation, and/or developments, that agreement shall remain in full force and effect, as applicable. In the event of any inconsistency between this Agreement and any other contract between Genzyme and me, the provisions of this Agreement shall prevail (unless such other contract expressly supersedes this Agreement). No modification of this Agreement shall be binding upon me or Genzyme unless made in writing and signed by an authorized officer of Genzyme.

      b.    <u>Survival and Waivers</u>. This Agreement will remain in effect if I am transferred, promoted, or reassigned to work on functions other than my present functions anywhere within Genzyme. My obligations under this Agreement shall survive the termination of my employment with Genzyme regardless of the manner of or reasons for such termination, and regardless of whether such termination constitutes a breach of any other agreement I may have with Genzyme. This Agreement shall inure to the benefit of, and be binding upon, Genzyme and me and our respective heirs, legal representatives, successors and assigns. This Agreement may be assigned by Genzyme for no additional consideration and without my consent to any successor entity in the event of a merger with, acquisition, change of control, or sale of all or substantially all of the business or assets of Genzyme. I acknowledge that the term "Genzyme," as used in this Agreement, shall also mean any such successor entity as the context requires. Failure by Genzyme to insist upon strict compliance with any term of this Agreement shall not be deemed a waiver of that or any other right.

FINAL APRIL 2007                  - 4 -

2012-06-08 15:31          lostpines                    1234 >>              Genzyme  P 2/2

c.  **Interpretation.** In the event that any provision of this Agreement shall be determined to be unenforceable by any court of competent jurisdiction by reason of its extending for too great a period of time or over too large a geographic area or over too great a range of activities, it shall be interpreted to extend only over the maximum period of time, geographic area or range of activities as to which it may be enforceable. If after application of the immediately preceding sentence, any provision of this Agreement shall be determined to be invalid, illegal or otherwise unenforceable by any court of competent jurisdiction, the validity, legality and enforceability of the other provisions of this Agreement shall not be affected. Except as otherwise provided in this paragraph, any invalid, illegal or unenforceable provision of this Agreement shall be severable, and all other provisions hereof shall remain in full force and effect.

d.  **Equitable Relief.** I acknowledge and agree that (i) the provisions set forth in this Agreement are necessary and reasonable to protect Genzyme's Confidential Information and goodwill; (ii) the specific time, geography and scope provisions set forth in Section 7 are reasonable and necessary to protect Genzyme's business interests; and (iii) in the event of my breach of any of the agreements set forth in this Agreement, Genzyme would suffer substantial irreparable harm and that Genzyme would not have an adequate remedy at law for such breach. In recognition of the foregoing, I agree that in the event of a breach or threatened breach of any of these covenants, in addition to such other remedies as Genzyme may have at law, without posting any bond or security, Genzyme shall be entitled to seek and obtain equitable relief, in the form of specific performance, or temporary, preliminary or permanent injunctive relief, or any other equitable remedy which then may be available.

e.  **Governing Law and Jurisdiction.** This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the Commonwealth of Massachusetts without regard to its principles of conflicts of laws, and shall be deemed to be effective as of the first day of my employment by Genzyme. I further agree that I shall be subject to the jurisdiction of the courts of the Commonwealth of Massachusetts in any action brought by Genzyme in connection with any of the provisions of this Agreement. Both parties further acknowledge that venue shall lie in Massachusetts, unless another venue is designated by Genzyme, and that material witnesses and documents are located in Massachusetts. Both parties further agree that any action, demand, claim or counterclaim relating to this Agreement shall be resolved by a judge alone, and both parties hereby waive and forever renounce the right to a trial before a civil jury.

BY PLACING MY SIGNATURE HEREUNDER, I ACKNOWLEDGE THAT I HAVE HAD ADEQUATE OPPORTUNITY TO REVIEW THESE TERMS AND CONDITIONS AND TO REFLECT UPON AND CONSIDER THE TERMS AND CONDITIONS OF THIS AGREEMENT. I FURTHER ACKNOWLEDGE THAT I FULLY UNDERSTAND ITS TERMS AND THAT I VOLUNTARILY EXECUTED THIS AGREEMENT.

Employee's signature:

Date: 5-8-12

*Thomas A. Dotter*

Print Name: THOMAS A. DOTTER

Accepted:

Genzyme Corporation

By: _____
Its: